IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**DENNIS M. GALLIPEAU**                                                           **PLAINTIFF**

versus                                                   **CIVIL ACTION NO. 5:12cv89-DCB-MTP**

**UNITED STATES OF AMERICA**                                      **DEFENDANT**

## REPORT AND RECOMMENDATION

THIS MATTER is before the court on the Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [17] filed by the Defendant, the United States of America, seeking judgment in its favor on claims raised against it in the *pro se* Plaintiff's complaint filed pursuant to the Federal Tort Claims Act ("FTCA"), and on the Motion for Summary Judgment [28] filed by Plaintiff. Having reviewed the submissions of the parties and the applicable law, the undersigned recommends that the Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [17] be granted and that Plaintiff's claims be dismissed with prejudice. The undersigned further recommends that Plaintiff's Motion for Summary Judgment [28] and Motion to Strike Exhibits [25] be denied.

FACTUAL BACKGROUND

Plaintiff Dennis M. Gallipeau, an inmate at the Federal Correctional Complex ("FCC") in Yazoo City, Mississippi, filed this action pursuant to the FTCA, alleging that the Defendant's employees were negligent in preparing his food. Specifically, Plaintiff alleges that on June 1, 2011, the Food Service Department at FCC served him and the other inmates a chicken and rice dinner that contained bones. He claims that he was injured as a direct and proximate result of the bones being left in the chicken and rice meal. Specifically, he suffered two broken teeth, a loose filling, and an abscess that resulted in an infection on his gums. He claims that the dentist at FCC informed him that the tooth which developed the abscess will have to be removed and

that said tooth is "one of Plaintiff's primary chewing teeth." Complaint [1] at 2. Plaintiff's injuries caused, and continue to cause him pain and suffering.

Plaintiff alleges that Defendant knew or should have known that the meal contained bones and posed a threat to his health and safety. Plaintiff seeks an "amount that is fair and reasonable, to compensate him for his damages and suffering, plus interest, and costs." *Id*. at 3.

Defendant concedes Plaintiff has exhausted his administrative remedies. Defendant moved to dismiss, or in the alternative, for summary judgment on October 5, 2012. *See* Motion [17]. Plaintiff responded [27] to the Motion and filed his own Motion for Summary Judgment [28] on January 11, 2013. Thus, this matter is ripe for consideration.

## STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). However, in order to survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (holding that "dismissal for failure to state a claim upon which relief may be granted *does not require* appearance, beyond a doubt, that plaintiff can prove no set of facts in support of claim that would entitle him to relief," abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)) (emphasis added); *see also In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

Because Defendant has submitted matters outside the pleadings with its Motion to Dismiss or, in the Alternative, for Summary Judgment [17], the motion should be characterized as a motion for summary judgment. *See* Fed. R. Civ. P. 12(b); *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir. 1991).

This court may grant summary judgment only if, viewing the facts in a light most favorable to the non-movant, the movant demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the movant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), or unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), are not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

The FTCA creates "a limited waiver of sovereign immunity making the United States liable to the same extent as private parties for certain torts of federal employees acting within the scope of their employment." *Montoya-Ortiz v. Brown*, 154 F. App'x 437, 439-40 (5th Cir. 2005) (citing *Unites States v. Orleans*, 425 U.S. 807, 813 (1976); 28 U.S.C. § 1346(b)). Liability of the United States under the FTCA is generally determined by reference to state law. *Molzof v. United States*, 502 U.S. 301, 305 (1992).

In Mississippi, the elements for negligence are (1) duty, (2) breach of duty, (3) causation, and (4) injury. *Patterson v. Liberty Assocs., L.P.*, 910 So. 2d 1014, 1019 (Miss. 2004). Plaintiff must prove these elements by a preponderance of the evidence. *Id.* In a summary judgment context, "the plaintiff must rebut the defendant's claim (i.e., that no genuine issue of material fact exists) by producing supportive evidence of significant and probative value." *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990). "Mere allegation or denial of material fact is insufficient to generate a triable issue of fact and avoid an adverse rendering of summary judgment." *Id.*

Defendant argues that "Plaintiff has failed to demonstrate that the Food Service Department at FCC Yazoo City owed him a duty to ensure that the chicken received from a third party vendor did not contain any remnants of chicken bones." Memo. [18] at 7.

Under Mississippi law,

> In order to hold the operator of a restaurant liable for an injury to his customer, sustained by serving to him food not suitable for human consumption, it must be shown that the restaurateur in the selection, preparation, cooking or serving of the food so injuring the customer did not use that degree of care which a reasonably prudent man, skilled in the art of selecting and preparing food for human consumption, would be expected to exercise in the selection and preparation of food for his own private table.

*Goodwin v. Misticos*, 42 So. 2d 397, 400 (1949).

The parties differ as to whether to apply the "foreign object"/"foreign-natural" test or the "reasonable expectation" test in determining whether Defendant is liable for the alleged bone in the chicken causing Plaintiff's injury. Defendant seems to advocate the "foreign object" or "foreign-natural" test. "Under the foreign-natural test, the outset determination is whether the injurious substance is 'foreign' or 'natural' to the food. As this test evolved nationally, the cases

4

held that if an injurious substance is natural to the food, the plaintiff is denied recovery in all events." *Porteous v. St. Ann's Cafe & Deli*, 713 So. 2d 454, 456 n.3 (La. 1998). In *CEF Enters., Inc. v. Betts*, the Mississippi Court of Appeals appeared to approve the "foreign object" test. *See CEF Enters., Inc. v. Betts*, 838 So. 2d 999, 1004 (Miss. Ct. App. 2003) ("In cases where a defendant business sells to the public a food product, which is contaminated by an animal, insect or other foreign object, and an individual consumes that item and becomes ill after discovering the contamination, this alone is enough to establish liability on the part of the defendant.").

Plaintiff favors the "reasonable expectation" test where "the query to determine liability is whether a reasonable consumer would anticipate, guard against, or expect to find the injurious substance in the type of food dish served." *Porteous v. St. Ann's Cafe & Deli*, 713 So. 2d 454, 456 n.3 (La. 1998); *see also Matthews v. Campbell Soup Co.*, 380 F. Supp. 1061, 1065 (S.D. Tex. 1974) (holding, based on an *Erie* guess, that Texas courts would follow the reasonable expectation rule); *Clime v. Dewey Beach Enters., Inc.*, 831 F. Supp. 341, 346 (D. Del. 1993) (applying reasonable expectation test to plaintiff's claim against defendants for breach of the implied warranty of merchantability against restaurant); *Battiste v. St. Thomas Diving Club, Inc.*, 15 V.I. 184 (D.V.I. 1979) (same). It appears that the Mississippi Supreme Court has yet to adopt either test.

In *Porteous v. St. Ann's Cafe & Deli*, cited by Plaintiff, the Louisiana Supreme Court rejected the application of the foreign-natural test and the reasonable expectation test, holding instead that the traditional duty/risk tort analysis should apply. 713 So. 2d 454, 455 (La. 1998). Specifically, the court held that "A food provider, in selecting, preparing and cooking food, including the removal of injurious substances, has a duty to act as would a reasonably prudent man skilled in the culinary art in the selection and preparation of food." *Porteous*, 713 So. 2d at

5

457.  In *Porteous*, the plaintiff injured his tooth when he bit into an oyster containing a pearl. The court stated that "[i]n determining whether a restaurant breached its duty by failing to act reasonably in the selection, preparation and cooking of the food that contained a substance which caused injury, the court should consider, among other things, whether the injurious substance was natural to the food served and whether the customer would reasonably expect to find such a substance in the particular type of food served."  *Id.*  While these factors are determinative in the foreign-natural test and the reasonable expectation test, they are merely factors to be considered by the court when using the duty/risk analysis in negligence law.  *Id.* at 457, n.6.  In dismissing the plaintiff's suit, the court reasoned that a pearl in an oyster is not entirely rare, but is a naturally occurring phenomenon, and thus, the customer should be aware of the possibility that a pearl may be found within the oyster.  The restaurant manager testified that it buys its oysters pre-shucked, pre-washed, and pre-packed from a third-party vendor.  Further, while the cooks may visually inspect the oysters when they are breading them, they do not dissect each oyster and inspect them for pearls or other objects.  The court concluded that "[t]here was nothing more the defendant restaurant could reasonably have done to eliminate the small possibility that a customer might find a pearl in an oyster and be injured thereby."  *Id.* at 457-58.

Plaintiff further cites to *Lassiegne v. Taco Bell Corp.*, No. 00-3259, 2002 U.S. Dist. LEXIS 5149 (E.D. La. March 15, 2002), an unreported opinion regarding a claim brought by a plaintiff who was injured by choking on a chicken bone found in a soft taco.  In the *Lassiegne* opinion, the U.S. District Court for the Eastern District of Louisiana applied Louisiana's traditional duty-risk tort analysis to the negligence claim, citing *Porteous*.  *Lassiegne*, 2002 U.S. Dist. LEXIS 5149, at *4-*6.  The court denied defendant's motion for summary judgment, finding that questions of material fact existed as to whether defendant's procedures were reasonable and whether it breached its duty to plaintiff.  *Id.* at *10.

In *Thomas v. HWCC-Tunica, Inc.*, 915 So. 2d 1092, 1094 (Miss. Ct. App. 2005), the Mississippi Court of Appeals affirmed summary judgment in favor of food serving establishment (casino) on plaintiff's negligence claim, finding that plaintiff failed to present any evidence as to the casino's duty to her or any breach of duty, where plaintiff was injured by a toothpick allegedly left in her prime rib. The court did not mention the reasonable expectation test or the foreign-natural test, but appeared to apply a traditional negligence/tort analysis. As the Mississippi Supreme Court has yet to adopt the foreign natural test or the reasonable expectation test, and the most recent Mississippi Court of Appeals case on point, *Thomas*, did not mention either test, this court will apply the traditional negligence/tort analysis set forth by the Mississippi Supreme Court *Goodwin v. Misticos*, 42 So. 2d 397, 400 (1949),[1] *supra*, similar to the standard set forth by the Louisiana Supreme Court in the *Porteous* case. *See Porteous*, 713 So. 2d at 457.

As reflected by the affidavit of William Woods, Food Services Administrator at FCC, the chicken that is used in the chicken and fried rice meal (and all other meals containing diced chicken)[2] is purchased in bulk from a local vendor, and comes skinned, de-boned and diced by the supplier. Ex. 6 to Motion [17-6]. The undersigned concludes that Plaintiff has failed to create a genuine issue of material fact as to whether a reasonably prudent food service worker,

---

[1] A restaurant has "the duty to use in the selection, preparation, cooking and serving of the corned beef served him that degree of care which a reasonably prudent man, skilled in the art of selecting and preparing food for human consumption, would be expected to exercise in the selection and preparation of food for his own private table, and he is not an insurer against injury to his customers." *Goodwin v. Misticos*, 42 So. 2d 397, 400 (1949).

[2] The baked chicken and BBQ chicken meals are served "on the bone," but do not include rice. *See* Exs. 6 and 9 to Motion [17]. Plaintiff indicates in his Declaration [29] that he "would expect to find bones in a chicken-on-the-bone meal but, [he] would not expect to find chicken bones in a non-chicken-on-the-bone meal." Declaration [29] at 1. Plaintiff claims he has since found bones in other diced chicken meals, and as proof, attaches traced drawings of the bones he allegedly found. *See* Ex. A to Declaration [29-1].

skilled in the art of selecting and preparing food for human consumption, would be expected to sift through pre-diced, pre-deboned chicken purchased from a third-party to ensure there were no chicken bones. *See Thomas,* 915 So. 2d at 1094 (affirming summary judgment in favor of food serving establishment (casino) on plaintiff's negligence claim, finding that plaintiff failed to present any evidence as to the casino's duty to her or any breach of duty, where plaintiff was injured by a toothpick allegedly left in her prime rib). Similar cases from other jurisdictions reach the same result. *See also Norris v. Pig'n Whistle Sandwich Shop*, 53 S.E.2d 718, 723 (Ga. Ct. App. 1949) ("Under the facts of this case the defendant was not required, in the exercise of ordinary care, to discover and eliminate every single particle of bone from the barbecued prok (sic) sandwich, and the mere presence of a particle of bone in the sandwich does not authorize an inference of negligence in preparing and furnishing the food to the plaintiff."); *Polite v. Carey Hilliards Rests., Inc.*, 338 S.E.2d 541, 542 (Ga. Ct. App. 1985) ("The presence of a piece of fishbone in a portion of fish does not authorize an inference of negligence in preparing and furnishing the food to plaintiff. The defendant was not required, in the exercise of ordinary care to discover and eliminate every piece of bone.")

Plaintiff has failed to establish that Defendant breached a duty owed to him or that his alleged injury was caused the Defendant's alleged breach. There is no competent summary judgment evidence that Defendant breached any duty to ensure that the chicken received from a third party vendor and served to the inmates did not contain any remnants of chicken bones. As stated above, the chicken that is used in the chicken and fried rice meal (and all other meals containing diced chicken) is purchased in bulk from a local vendor, and comes skinned, de-boned and diced by the supplier. Ex. 6 to Motion [17-6]. Thus, if a bone were left in the chicken and rice meal, it was not due to the negligence of Defendant or its staff.

Moreover, if Plaintiff could show a duty and breach of duty by Defendant, he has further

8

failed to establish the causation element. First, according to the "as planned" and "as served" menus for FCC, no chicken and rice meal was served on June 1, 2011, or during the week of June 1, 2011. *See* Exs. 6-8 to Motion [17]. Further, there is no record that Plaintiff reported biting into a bone in his chicken and rice meal to a Food Service Department staff member on June 1, 2011. Ex. 6 to Motion [17-6].

Likewise, the medical records do not corroborate Plaintiff's allegations that he was injured on or around June 1, 2011. The medical records reflect that Plaintiff submitted an Inmate Request to Staff form on August 22, 2011 (two and a half months after the alleged injury occurred), requesting that he be placed on the waiting list to have his teeth cleaned. Ex. 4 to Motion [17-4]. The request did not mention anything about broken teeth or a loose filling. *Id.*

On October 28, 2011, Plaintiff presented to sick call at the Dental Clinic and complained that the "back half of [his] upper tooth broke off while eating." Exs. 2 and 5 to Motion [19]. Plaintiff was examined by Dr. John Lockhart, a staff dentist at FCC, who noted that tooth number 15 had a large portion of amalgam (filling) that had fractured. Plaintiff stated that the tooth did not hurt, but it was sharp and he would like to have it filled. Dr. Lockhart informed Plaintiff that the area needing restoration was large and the tooth in question appeared to be non-vital. Dr. Lockhart then etched the tooth and restored the area with Fuji IX Extra (glass restoration material). Occlusion was verified and the restoration was sealed with G Coat (sealant). *Id.* The record does not indicate that Plaintiff made any further complaints about the tooth or that he broke two teeth, and there is no indication in Plaintiff's dental records that he suffered a large abscess and gum infection. *Id.*

As set forth above, Plaintiff did not seek treatment for his alleged injuries until August 22, 2011, at the earliest, when he requested that he be placed on the waiting list to have his teeth

9

cleaned. Ex. 4 to Motion [17-4]. The request did not mention anything about broken teeth or a loose filling. *Id.* Plaintiff explains in his declaration that he was told he must have his teeth cleaned before he could be seen by a dentist. *See* Declaration [29]. However, this does not explain why Plaintiff waited over two months to request a teeth cleaning. In his Declaration [29], he claims he was placed on a callout for the medical department "shortly after damaging [his] teeth" and he "believe[s], but [does] not specifically recall, that [he] was placed on the callout in reference to [his] yearly physical." Declaration [29] at 2.

According to the dental records, Plaintiff first reported breaking a tooth while eating on October 28, 2011. *See* Exs. 2 and 5 to Motion [19]. Dr. Lockhart examined Plaintiff and noted that tooth number 15 had a large portion of amalgam (filling) that had fractured. Dr. Lockhart restored and sealed the tooth. *Id.* According to the records, Plaintiff made no further complaints about the tooth and there is no indication that he suffered a large abscess and gum infection. *Id.*[3] Finally, Dr. Lockhart opined that it is likely that the fractured filling that he repaired in October 2011 was fractured or came loose as a result of its size, not from biting down on a chicken bone in June 2011, as claimed by Plaintiff. *See* Ex. 2 to Motion [19].

Plaintiff's Response [27] and Affidavit [29] fail to create a genuine issue of material fact.

---

[3]In his Declaration [29], Plaintiff claims that shortly after damaging his teeth, Dr. Lockhart diagnosed the abscess on his gums and told him to sign up for a dental sick-call. When Plaintiff saw Dr. Lockhart for the alleged second time (presumably the October 2011 visit), Dr. Lockhart allegedly told Plaintiff he would not treat the infection causing the abscess and that the tooth would need to be pulled. Dr. Lockhart filled the broken tooth. Declaration [29] at 3.

Plaintiff disagrees with Dr. Lockhart's affidavit and claims his dental records are "highly suspect," and claims some records are missing. *Id*. at 4. In support of his argument, Plaintiff attaches three pages of medical records not attached to Defendant's motion. However, the records are from the same date as the first time Defendant claims Plaintiff saw Dr. Lockhart, October 28, 2011. The only apparent significance of the records is that they indicate "yes" by Plaintiff's history of swelling or lumps in mouth/throat and decayed teeth, and that Plaintiff was prescribed ibuprofen and oxcarbazepine for pain management. *See* Ex. B to Declaration [29-2].

His disagreement with Dr. Lockhart's affidavit based on his recollection is not competent summary judgment evidence sufficient to raise a genuine issue of material fact. Likewise, the records[4] he attaches do not establish causation. Based on the foregoing, Plaintiff has failed to rebut Defendant's claim that no genuine issue of material fact exists by producing supportive evidence of significant and probative value. *See Palmer*, 564 So. 2d at 1355.

## RECOMMENDATION

For the reasons stated above, the undersigned recommends that Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [17] be granted and that Plaintiff's claims be dismissed with prejudice. The undersigned further recommends that Plaintiff's Motion for Summary Judgment [28][5] and Motion to Strike Exhibits [25] be denied.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs.*

---

[4]*See supra*, footnote 3.

[5]Plaintiff's Motion for Summary Judgment [28] is a one-page document with conclusory statements that he is entitled to judgment as a matter of law. In support of his Motion [28], he relies on his Response [27][29], which the court has addressed above.

*Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 28th day of March, 2013.

s/ Michael T. Parker
United States Magistrate Judge